POLSTON, J.
Andre Isaiah Dunbar seeks review of the decision of the Fifth District Court of Appeal in Dunbar v. State, 46 So.3d 81 (Fla. 5th DCA 2010) (en banc), on ■ the *903 ground that it expressly and directly conflicts with a decision of another district court of appeal, Gardner v. State, 30 So.3d 629 (Fla. 2d DCA 2010), on a question of law.[1] For the reasons that follow, we approve of the Fifth District’s double jeopardy analysis but remand for resentencing with Dunbar present.
I. BACKGROUND
Following a jury trial in 2009, Andre Isaiah Dunbar was found guilty of robbery with a firearm, two counts of aggravated assault with a firearm, and grand theft. Dunbar, 46 So.3d at 82. The jury made special findings that Dunbar actually possessed the firearm in committing the robbery and in both instances of aggravated assault.
At sentencing, the trial court orally pronounced a life sentence for robbery with a firearm. However, the trial court failed to include in its oral pronouncement the ten-year mandatory minimum sentence for robbery with a firearm required by section 775.087(2), Florida Statutes (2008). 46 So.3d at 82-83. Later that day and without the parties present, the trial court entered a written sentencing order including the mandatory minimum term. See id. at 82.
On appeal to the Fifth District, Dunbar argued that the mandatory minimum term must be stricken from the written sentence because it did not conform to the sentence as orally rendered. Id. In affirming Dunbar’s written sentence, the Fifth District reasoned that, because “imposition of a mandatory minimum sentence under section 775.087(2) ... is a nondis-cretionary duty of a trial court when the record indicates that the defendant qualifies for mandatory minimum sentencing,” the oral sentence in Dunbar’s case was properly subject to the trial court’s correction. Id.
Furthermore, the Fifth District in Dunbar explained that, because the original sentence was invalid, double jeopardy principles were not implicated by the later addition of harsher terms. Id. at 83. In reaching its conclusion that there was no double jeopardy violation, the Fifth District reaffirmed the law as set forth in a prior decision, Allen v. State, 853 So.2d 533, 535 (Fla. 5th DCA 2003), where it held that a similar correction did not violate double jeopardy protections because the original sentence was “illegal” and “subject to correction” under Florida Rule of Criminal Procedure 3.800(a) “at any time.”
In contrast to the Fifth District’s decision in Dunbar, the Second District in Gardner, 30 So.3d at 632, held that double jeopardy considerations precluded the later addition of a ten-year mandatory minimum term, even where the trial court had no discretion to withhold the term. In Gardner, the trial court originally failed to orally pronounce the term required by section 775.087(2), then recalled Gardner after the prosecution belatedly objected to the mistake. Id. at 630-31. When Gardner had been returned to the courtroom, the trial court orally pronounced the correct sentence, including the mandatory minimum term. Id. at 631.
On appeal to the Second District, Gardner sought reversal of the sentence ultimately imposed, arguing that correction of his original sentence violated double jeopardy principles. Id. at 630. The Second District acknowledged that the original sentence was “apparently erroneous” but still agreed with Gardner that the trial court “had no authority to reopen the proceedings once the hearing had concluded and double jeopardy had attached” be *904 cause “Florida law generally accords a level of finality to a sentence once it has been orally pronounced and the defendant has begun to serve the sentence.” Id. at 632 (quoting Delemos v. State, 969 So.2d 544, 548 (Fla. 2d DCA 2007)).
Judge Altenbernd dissented from the Second District’s decision in Gardner, reasoning as follows:
In Delemos v. State, 969 So.2d 544 (Fla. 2d DCA 2007), I suggested that the Florida law on the issue of when a sentence becomes final for purposes of double jeopardy may be overly restrictive and that the U.S. Constitution may permit a longer window of time in which courts could correct errors made during oral pronouncement. I continue to believe that our case law does not reflect the extent to which simple human error is inevitable in oral pronouncements and that the constitutional doctrine of double jeopardy was never intended to make sentencing a game in which mental errors by judges and attorneys are irreparable even when the error is discovered minutes later. See United States v. DiFrancesco, 449 U.S. 117, 135, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (quoting Bozza v. United States, 330 U.S. 160, 166-67, 67 S.Ct. 645, 91 L.Ed. 818 (1947), for the principle that “[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner”).
So long as a trial judge is not exercising his or her discretion to increase the severity of the overall sentence that the trial judge intended to impose at the oral pronouncement, I believe we could and should have a procedural mechanism by which trial judges are allowed to correct misstatements and confusions in sentences and to impose mandated sentencing conditions that were overlooked at oral pronouncement. When a judge inadvertently imposes a fifteen-year sentence on a third-degree felony and a five-year sentence on a second-degree felony, for example, I do not understand why constitutional double jeopardy should bar the judge from imposing the intended fifteen-year sentence for the second-degree felony even a few days after the mistake in the oral pronouncement.
A defendant has a right to a legal sentence. This defendant is about to receive the benefit of an illegal sentence, in all likelihood because a judge and several lawyers were anxious to go to lunch. Somehow, Florida’s technical approach to double jeopardy allows inadvertent mistakes to give defendants the right not to legal sentences, but to sentences that are often more like half jeopardy.
Gardner, 30 So.3d at 634-35 (Altenbernd, J., dissenting).
II. ANALYSIS

A. Double Jeopardy

Dunbar argues that the later addition of a mandatory minimum term violated his double jeopardy rights under both the federal and state constitutions because he was subjected to multiple punishments for the same offense.[2] We disagree.[3]
As it relates to barring multiple punishments for the same offense in the noncapital sentencing context,
*905 the application of the double jeopardy clause ... turns on the extent and legitimacy of a defendant’s expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence.
United States v. Fogel, 829 F.2d 77, 87 (D.C.Cir.1987). In other words, the later imposition of more onerous terms “violates the double jeopardy clause only when it disrupts the defendant’s legitimate expectations of finality.” United States v. Young, 958 F.2d 1288, 1291 n. 8 (11th Cir.1992); see Goene v. State, 577 So.2d 1306, 1309 (Fla.1991) (“Goene therefore had no legitimate expectation of finality in the sentence originally imposed and there is no double jeopardy prohibition against reimposition of a correct sentence.”).
For example, the United States Supreme Court held in Bozza, 330 U.S. 160, 67 S.Ct. 645, that there was no violation of double jeopardy principles where the sentencing court later increased an original sentence that it had no discretion to impose. See also DiFrancesco, 449 U.S. at 137, 101 S.Ct. 426 (“Bozza ... demonstrate[s] that the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase.”). The defendant in Bozza was convicted of a federal crime that carried a mandatory minimum sentence of $100 and imprisonment, but the original oral pronouncement imposed only imprisonment. 330 U.S. at 165, 67 S.Ct. 645. Five hours later, the sentencing court recalled Bozza and pronounced a sentence including the mandatory fine. Id. In holding that the sentencing court had not violated Bozza’s double jeopardy rights, the Supreme Court reasoned as follows:
This Court has rejected the “doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence.” The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court “only set aside what it had no authority to do and sub-stitutefd] directions required by the law to be done upon the conviction of the offender.” It did not twice put petitioner in jeopardy for the same offense. The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.
Id. at 166-67, 67 S.Ct. 645 (citations and footnote omitted) (quoting In re Bonner, 151 U.S. 242, 260, 14 S.Ct. 323, 38 L.Ed. 149 (1894)).
This Court has also stated that “[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.” Harris v. State, 645 So.2d 386, 388 (Fla.1994) (quoting DiFrancesco, 449 U.S. at 135, 101 S.Ct. 426). In Harris, the sentencing court originally sentenced Harris and failed to pronounce terms required by the habitual offender statute. Id. at 387 & n. 1. Harris appealed from his convictions on other grounds, and, in the meantime, this Court issued a decision in another case[4] clearly indicating that habit-ualization should have applied in Harris’s case. Id. at 387 n. 1. Therefore, on remand from Harris’s successful appeal on other grounds, the sentencing court imposed the term. Id. Harris again appeal *906 ed, this time arguing that double jeopardy-protections precluded a more onerous sentence on remand. Id. In rejecting his argument, this Court reasoned that “Harris had no expectation of finality regarding his sentence where he opened the door to the district court’s appellate jurisdiction on an issue of law that was clarified while his case was still pending.” Id. at 388; see also Goene, 577 So.2d at 1309 (concluding that, because Goene had intentionally hidden information that would have resulted in a higher sentence, he “had no legitimate expectation of finality in the sentence originally imposed”).
Here, in Dunbar, the trial court initially imposed a life sentence without the ten-year mandatory minimum sentencing term for robbery with a firearm under section 775.087(2), Florida Statutes. The trial court initially pronounced a sentence it had no discretion to impose, realized its error later that day, and added the nondis-cretionary mandatory minimum terms to the sentence. We conclude that under these facts,[5] Dunbar had no legitimate expectation of finality in his sentence as orally pronounced and that the trial court did not violate double jeopardy principles by adding the term.
The parties do not dispute that if the prosecution had properly appealed the sentence as orally pronounced, the sentence would have been reversed and remanded with instructions to impose the term. See, e.g., State v. Scanes, 973 So.2d 659, 661 (Fla. 3d DCA 2008); State v. Couch, 896 So.2d 799 (Fla. 1st DCA 2005); State v. Strazdins, 890 So.2d 334 (Fla. 2d DCA 2004); State v. Brendell, 656 So.2d 594 (Fla. 5th DCA 1995). In fact, the parties agree that defendants may receive increased sentences under that procedural framework without a violation of their double jeopardy rights. We see no distinction for double jeopardy purposes between an increase in the sentence following remand and an increase in the sentence within the time allowed for filing an appeal. See DiFrancesco, 449 U.S. at 135-36, 101 S.Ct. 426 (“While Pearce dealt with the imposition of a new sentence after retrial rather than, as here, after appeal, that difference is no more than a ‘conceptual nicety.’ ”) (quoting North Carolina v. Pearce, 395 U.S. 711, 722, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). When a trial court fails to pronounce nondiscretionary sentencing terms, the defendant has no legitimate expectation in the finality of that sentence, at least until the reviewing court has issued a mandate or the time for filing an appeal has run.
Accordingly, the trial court did not violate double jeopardy principles in adding *907 the mandatory minimum term to Dunbar’s sentence on the same day as oral pronouncement. Dunbar had no legitimate expectation of finality in the initial sentence as orally pronounced because it did not include the nondiscretionary mandatory minimum term.

B. Due Process

Dunbar also argues that he had a due process right to be present when the terms of his sentence were increased. We agree.
“ ‘One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process,’ which includes a ‘reasonable opportunity to be heard.’ ” Jackson v. State, 767 So.2d 1156, 1159 (Fla.2000) (quoting Scull v. State, 569 So.2d 1251, 1252 (Fla. 1990)). Therefore, “[cjriminal defendants have a due process right to be physically present in all critical stages of trial.” Muhammad v. State, 782 So.2d 343, 351 (Fla. 2001). Likewise, the United States Supreme Court has determined that “a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.” Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). A violation of the right to presence is “subject to harmless error analysis and the proceeding will only be reversed on this basis if ‘fundamental fairness has been thwarted.’” Smithers v. State, 826 So.2d 916, 927 (Fla.2002) (quoting Kearse v. State, 770 So.2d 1119, 1124 (Fla.2000)); see Kormondy v. State, 983 So.2d 418, 429 (Fla.2007) (“We hold that Kormondy’s failure to be at these particular [pretrial] conferences did not affect the validity of the trial itself to the extent that the verdict could not have been obtained.”).
We have held that a defendant’s “right to be present extends to the hearing where her sentence will be reconsidered” because sentencing is “a critical stage of every criminal proceeding.” Jackson, 767 So.2d at 1160. In fact, the right to be present at sentencing is “explicitly provided in the Florida Rules of Criminal Procedure,” id., which requires that “[i]n all prosecutions for crime the defendant shall be present ... at the pronouncement of judgment and the imposition of sentence.” Fla. R.Crim. P. 3.180(a).
In this case, Dunbar was entitled to be present when his sentence was increased because a sentencing proceeding in which a sentence is increased is a critical stage of trial at which the defendant’s presence “would contribute to the fairness of the procedure.” Stincer, 482 U.S. at 745, 107 S.Ct. 2658. Therefore, Dunbar’s due process rights were violated. A defendant’s absence at resentencing constitutes reversible error regardless of a defendant’s opportunity to present additional evidence. See Jackson, 767 So.2d at 1160.
Accordingly, the trial court erred in imposing mandatory minimum terms without Dunbar present.
III. CONCLUSION
Because double jeopardy does not bar imposition of the mandatory minimum term in this case, we approve of the Fifth District’s double jeopardy analysis in Dunbar and disapprove of the Second District’s decision in Gardner. Yet, because Dunbar had a right to be present when the mandatory minimum term was added to his sentence, we quash the decision of the Fifth District and remand for resentencing with Dunbar present.
It is so ordered.
LABARGA and PERRY, JJ., concur.
*908 PARIENTE and LEWIS, JJ., concur in result.
QUINCE, J., concurs in result only.
CANADY, C.J., concurs in part and dissents in part with an opinion.

. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

. “The scope of the Double Jeopardy Clause is the same in both the federal constitution and the Florida Constitution.” Hall v. State, 823 So.2d 757, 761 (Fla.2002).

. "A double jeopardy claim based upon undisputed facts presents a pure question of law and is reviewed de novo.” Pizzo v. State, 945 So.2d 1203, 1206 (Fla.2006).

. Burdick v. State, 594 So.2d 267 (Fla. 1992).

. These facts are distinguishable from those prompting the general rule we announced in Ashley v. State, 850 So.2d 1265, 1267 (Fla. 2003), that a sentence may not be increased after service has begun without violating double jeopardy protections. Unlike the initial sentence in Dunbar, which the trial court had no discretion to impose, the initial sentence in Ashley was valid. See Ashley, 850 So.2d at 1266-67. The trial court in Ashley pronounced a sentence and later added terms of habitualization and imposed mandatory minimum terms, neither of which were required by law. See § 775.084(1 )(b), Fla. Stat. (1999) (" ‘Habitual violent felony offender’ means a defendant for whom the court may impose an extended term of imprisonment_”) (emphasis added); § 775.084(4)(b), Fla. Stat. (1999) ("The court ... may sentence the habitual violent felony offender as follows....”) (emphasis added); State v. Cotton, 769 So.2d 345, 349 (Fla.2000) ("[P]ursuant to that statute, trial judges have the discretion not to sentence a qualifying defendant as a habitual felony offender.’’). In contrast, no discretion is given to trial courts in deciding whether to impose mandatory minimum terms under section 775.087(2), which provides that "such person ... shall be sentenced to a minimum term of imprisonment of 10 years.” (Emphasis added.)